IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                              No. CR 15-4299 JB

GRANT HYKES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff United States' Sentencing Memorandum, filed August 22, 2016 (Doc. 61)("Sentencing Memorandum"). The Court held a Sentencing Hearing on March 21, 2017. The primary issues are whether, when calculating Defendant Grant Hykes' offense level under United States Sentencing Guidelines ("U.S.S.G."), the Court should: (i) apply a 3-level enhancement for deliberately targeting a government employee, see U.S.S.G. § 3A1.2; and (ii) apply a 2-level enhancement for reckless endangerment during flight, see U.S.S.G. § 3C1.2. The Court concludes that neither enhancement is appropriate.

## FACTUAL BACKGROUND

On November 9, 2015, Detective Jerry Koppman, a Bernalillo County Sherriff's Deputy, saw, outside of his residence, a white man parked on a unique sport motorcycle. The man aroused Koppman's suspicions, Koppman exited his residence to accost the man, and the unknown man quickly and recklessly departed the area on the motorcycle. The next day, a confidential informant called Koppman in a panic, indicating Hykes was sick of Koppman interfering with him, and was threating to kill Koppman and Koppman's family. The following

day, Koppman observed the unknown man again parked in front of Koppman's house, and Koppman again left his residence to accost the unknown man. When the unknown man again fled on his motorcycle, Koppman followed in an unmarked vehicle, and the unknown man took deliberate and sudden evasive action.

On November 12, 2015, the next day, the Bernalillo County Sherriff's Office ("BCSO") began to investigate one of Hykes' social media profiles and found a photograph that Hykes had posted approximately ten months earlier that showed Hykes holding a large-caliber revolver to his head. The BCSO also discovered that Hykes is a convicted felon and located Hykes in a restaurant parking lot near his mother's 2008 silver Ford F-150 truck. When detectives approached Hykes, he threw a loaded 9mm handgun into the truck's bed. When detectives later searched the truck with the verbal and written consent of Hykes' mother, the truck's owner, they discovered a .50-caliber rifle with a mounted scope behind the truck's seat.

After Hykes' arrest, detectives found a text message on Hykes' cellular telephone in which Hykes bragged that he had drawn a weapon on Koppman the prior day, November 11, 2015. Hykes admits that the text message referred to the incident where Koppman followed a suspicious motorcycle. A woman, who was with Hykes during that incident and when Hykes was arrested, told detectives that she was aware that Hykes had a gun on his person just before he was arrested. The detectives determined that Hykes was a felon in possession of a firearm.

**PROCEDURAL BACKGROUND**

On June 1, 2016, Hykes pleaded guilty to one count of being a felon in possession of a firearm and ammunition contrary to 18 U.S.C. § 922(g)(1). See Plea Minute Sheet, filed June 1, 2016 (Doc. 55). On August 11, 2016, the United States Probation Office ("USPO"), in its Presentence Report, filed August 11, 2016 (Doc. 57)("PSR"), calculated a base offense level of

20 and applied a 3-level reduction for acceptance of responsibility for a total offense level of 17. Because Hykes had a criminal history category of II, the USPO calculated a guidelines range of 27 to 33 months of imprisonment, see PSR ¶ 98, at 23, up to 3 years of supervised release, see PSR ¶ 101, at 24, and a $100.00 special assessment, see PSR ¶ 106, at 24. Hykes is not eligible for probation. See PSR ¶ 103, at 24.

On August 18, 2016, the United States requested an evidentiary hearing as part of Hykes' sentencing hearing, because it intended to present evidence from Koppman that indicated that Hykes should be assessed two sentencing enhancements that the PSR did not identify: (i) a 3-level enhancement for deliberately targeting a government employee under U.S.S.G. § 3A1.2; and (ii) a 2-level enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight. If the Court applied the two requested enhancements, Hykes' total offense level would be 22, so -- given Hykes' category II criminal history -- Hykes' guidelines sentencing range would be 46 to 57 months.

On August 22, 2016, the United States filed the Sentencing Memorandum, which reiterates the United States' request for the two sentencing enhancements. The United States argues that Hykes

> engaged in uniquely egregious conduct which had a negative impact on other people. Specifically, defendant took affirmative steps to follow through with his plan to rob and kill Det. Koppman. Defendant's brazen acts of terrorizing Det. Koppman -- a government officer -- and his family are disturbing and unacceptable. Det. Koppman endured a quality of life that was meaningfully worse because of what defendant did. It also impacted Det. Koppman financially. Because of defendant's treachery, Det. Koppman was forced to quickly relocate his family for safety reasons to a new home. As a result, Det. Koppman had to sell his old home for a reduced price, losing a large amount of money in the process.

Sentencing Memorandum at 7-8. The United also argues that the enhancement for reckless endangerment in flight is appropriate, because Hykes created a public danger when he drove his motorcycle recklessly when fleeing Koppman on November 11, 2015.

On December 6, 2016, the USPO declined to modify its PSR to include the two requested enhancements. See Addendum to the Presentencing Report at 1-2, filed December 6, 2016 (Doc. 70)("PSR Addendum"). The PSR Addendum indicates that the 3-level enhancement for targeting a government officer or employee is inappropriate, because: (i) the offense of being a felon in possession of a firearm is not an offense against a person; (ii) there is no indication that Hykes knew that he was going to encounter Koppman in the restaurant parking lot where he was arrested; and (iii) there is no evidence that Hykes was motivated to possess a firearm at that time by Koppman's status as a police officer. See PSR Addendum at 1. The PSR Addendum also indicates that the 2-level enhancement for reckless endangerment during flight is likewise inappropriate, because: (i) Hykes did not attempt to flee when he was arrested for the pleaded offense; and (ii) Hykes' flight from Koppman the day before his arrest "did not appear to rise to the level of recklessness and endangerment as required in connection with commission of the instant offense." PSR Addendum at 1-2.

## ANALYSIS

U.S.S.G. § 3A1.2 says that a 3-level enhancement for targeting a government official should apply if two criteria are met: (i) "the victim was a government officer or employee"; and (ii) "the offense of conviction was motivated by such status." U.S.S.G. § 3A1.2. Application Note 3 to U.S.S.G. § 3A1.2 says that "motivated by such status" means that the offense of conviction was motivated by the fact that the victim was a government officer or employee. U.S.S.G. § 3A1.2 application note 1. The Court agrees with the USPO that there is no evidence that Hykes' offense of conviction -- felon in possession of a firearm and ammunition -- satisfied the second requirement, i.e., Koppman's official status motivated that possession. Hykes told the confidential informant that Hykes was sick of Koppman and Koppman's interference in his life.

Nevertheless, it is not clear from this evidence that Hykes' revulsion toward Koppman: (i) was grounded in Koppman's status as a detective; or, more importantly, (ii) was the motive behind Hykes owning a firearm. The Court therefore agrees with the USPO that the 3-level enhancement is inapplicable and declines to apply the 3-level enhancement.

U.S.S.G. § 3C1.2 says that a 2-level enhancement applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer . . . ." U.S.S.G. § 3C1.2. The application notes indicate that flight is to be construed broadly and includes preparation for flight, i.e., where the conduct occurs in the course of resisting arrest. See U.S.S.G. § 3C1.2 application note 3. According to the PSR's account of Hykes' arrest, Hykes threw a 9mm gun into the F-150's bed immediately after detectives began to approach him, and then "[a] detective took hold of the defendant's right arm in an attempt to search him for weapons, and he violently pulled away. Another detective assisted in taking the defendant to the ground while he continued to resist and tr[ied] to pull away." PSR ¶ 14, at 4-5. The Court notes that this description of Hykes resisting arrest appears to qualify as flight under the expansive definition provided by § 3C1.2's application notes. The Court is hard pressed, however, to discern any evidence that this flight satisfies § 3C1.2's requirement that the flight "recklessly created a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 3C1.2.

The United States Court of Appeals for the Tenth Circuit has observed that "[t]here are situations in which a defendant might flee from law enforcement officers in a way that does not recklessly endanger others." United States v. Conley, 131 F.3d 1387, 1390 (10th Cir. 1997)(Ebel, J.). See United States v. Simpson; 845 F.3d 1039 (10th Cir. 2017). See also United States v. Osborne, 593 F.3d 1149, 1154 (10th Cir. 2010)("The district court would deem as

categorically outside of the heartland of flights from law enforcement high-speed car chases under the view that all such chases endanger more than one person. We cannot conclude as a legal matter, however, that this is so."); United States v. Porter, 643 F. App'x 758, 760 (10th Cir. 2016)(unpublished).

The detectives in this case appear to have had little problem taking Hykes to the ground and handcuffing him. After being handcuffed, Hykes did not attempt to flee again. The Court therefore partially disagrees with the USPO's reasoning but agrees with its conclusion that the requested 2-level enhancement does not apply. For the purposes of the enhancement, Hykes attempted to flee when arrested, but that flight did not create a substantial risk of death or serious bodily injury to another person. The Court, therefore, declines to apply the 2-level enhancement under U.S.S.G. § 3C1.2.

**IT IS ORDERED** that the two requests for sentencing enhancements in the United States' Sentencing Memorandum, filed August 22, 2016 (Doc. 61), are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James D. Tierney
  Acting United States Attorney
Samuel A. Hurtado
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Sylvia A. Baiz
　Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

　　*Attorneys for the Defendant*